UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| KENNETH R. ARNOLD, as Personal Representative of the ESTATE OF ROBERT EARL PARKER,<br><br>                Plaintiff,<br><br>vs.<br><br>CITY OF BOULDER CITY, et al.,<br><br>                Defendants. | Case No.  2:04-cv-01093-BES-GWF<br><br>**ORDER** |

      This matter is before the Court on Defendants' Motion for Protective Order Pursuant to FRCP 26 (#27), filed on June 27, 2006; Plaintiff's Opposition to Motion for Protective Order (#31), filed on July 14, 2006; and Defendants' Reply in Support of Motion for Protective Order (#33), filed on July 28, 2006. A hearing on this motion was held on August 10, 2006.

**FACTUAL BACKGROUND**

      The estate of Robert Earl Parker ("Parker"), deceased, has sued the City of Boulder City, Nevada ("City") and police officers, Officer Joseph "Tony" Norte and Officer Daniel, for injuries that Parker allegedly sustained during an arrest incident that occurred on August 15, 2002.[1] *Amended Complaint* (#6). According to the complaint, Parker was a passenger in a vehicle traveling in Boulder City that was stopped by the police. Parker allegedly complied with the officers' instructions to exit the

---

[1] Parker was 73 years old at the time of the incident. He reportedly died of causes unrelated to the events that are the subject matter of this case.

1  vehicle. While Parker was exiting the vehicle, the driver allegedly told the police officers that Parker
2  suffered from Alzheimer's Disease. After Parker exited the vehicle, the officers allegedly violently
3  attacked and battered him without provocation or justification. The officers subsequently charged
4  Parker with a crime, but the charges were dismissed. *Id.,* ¶¶ 8-15.
5        Plaintiff's First Cause of Action alleges that the officers' use of excessive force violated
6  Parker's constitutional rights under the Fourth and Fourteenth Amendments and 42 U.S.C. §§ 1983 and
7  1988. The Second Cause of Action alleges a claim for intentional and negligent infliction of severe
8  emotional distress. The Third Cause of Action, entitled "Custom, Policy and Practice Civil Rights
9  Violation," alleges that "[t]he City of Boulder City grossly failed to train, supervise and discipline its
10 police officers in the fundamental law of search, arrest, detention, use of force, and how to interact with
11 the elderly and individuals with mental disease, all resulting in the attack on [Parker] by Defendant
12 Officers." *Id.,* ¶ 24. This cause of action further alleges that the City negligently hired the Defendant
13 Officers because it knew or should have known that they were not qualified or competent to be police
14 officers. *Id.,* ¶ 25. This cause of action also alleges that the Defendant officers acted in accordance
15 with an unlawful *de facto* policy of the City and that the City failed to take appropriate actions to
16 terminate this policy or to properly investigate, supervise and discipline its officers. *Id.,* ¶ 26. The
17 Fourth Cause of Action alleges a conglomeration of state law causes of action including assault and
18 battery, false arrest, malicious prosecution, abuse of process, conspiracy tort, and negligence. *Id.,* ¶¶
19 33-35. This cause of action also alleges that the City is liable for negligent hiring, training and
20 supervision of the Defendant officers. *Id.,* ¶ 36.
21       According to the police reports attached as SEALED Exhibit "A" (#28) to Defendant's Motion
22 (#27), the motor vehicle in which Parker was riding was stopped by the police based on suspicion that it
23 was involved in a felony "hit-and-run" accident. Because of the felony nature of the stop, the officers
24 drew their guns and ordered the occupants to exit the vehicle. According to the reports, after exiting the
25 vehicle, Parker refused to follow the officers' instructions and resisted their attempt to place him in
26 handcuffs. Defendants Norte and Daniel engaged in a physical altercation with Parker, forced him to
27 the ground and placed him in handcuffs.
28 . . .

Plaintiff served requests for production on Defendants which seek production of all documents supporting, concerning or regarding Defendants' answers to interrogatories, Request No. 1, and Officers Norte's and Daniel's personnel files, Request Nos. 2 and 3. These requests and Defendants' responses and objections are quoted at pages 4-5 of Defendant's Motion.[2]  *See Motion for Protective Order* (#27), page 4.

Request No. 1 is sufficiently broad to include the City's Internal Affairs Division ("IAD") investigation file regarding the subject incident. Defendants' objection to this request stated as follows:

> OBJECTION. Boulder City repeats and assert (sic) each and every objection asserted (sic) Plaintiff's Interrogatories. Boulder City further objects that certain documents responsive to this request contain personal and/or confidential information. Although Defendant is willing to produce relevant documents which are not privileged or confidential, any production must first be subject to an appropriate order. A proposed form of protective order and privilege log will be sent under separate cover. Not in limitation of the foregoing objections, Defendant respond (sic) as follows: See documents produced with Defendant's rule 26.1 disclosures and documents accompanying this response.

*Motion for Protective Order* (#27), page 4.

Defendants' response to Request Nos. 2 and 3 stated as follows:

> OBJECTION that this request is vague and ambiguous, particularly, but not exclusively, as to what is meant by "files concerning"; and that the requested documents contain personal and confidential information. Although Defendant is willing to produce relevant documents which are not privileged or confidential, any production must be first subject to an appropriate order. A proposed form of protective order and privilege log will be sent under separate cover.

*Motion for Protective Order* (#27), pages 4-5.

A stipulated protective order governing the confidentiality and use of any documents produced to Plaintiff in response to the foregoing requests was filed on August 5, 2006. *Stipulation and Order* (#37). The Court has not been provided with any information whether Defendants ever served a

---

[2]The date that Defendants served their responses is not set forth in the motion, nor are copies of the Responses to Requests for Production attached to the Motion. A copy of Defendants Boulder City's Answers to Interrogatories is attached to the Motion and shows that they were served on September 13, 2005. *Motion* (#27). Absent other information, the Court assumes that Defendant's Responses to the Requests for Production were served at or about the same time.

privilege log regarding the aforementioned records as referenced in Defendants' objections.

## DISCUSSION

In support of their arguments that the IAD investigation file and the officers' personnel files are irrelevant, Defendants' Motion for Protective Order (#27) principally relies on *Maddox v. City of Los Angeles*, 792 F.2d 1408 (9th Cir. 1986) and *Segura v. City of Reno*, 116 F.R.D. 42 (D.Nev. 1987). Defendants also argue that the IAD investigation file and Officers Daniel's and Norte's personnel files are protected from disclosure by the executive privilege. As to their claim of executive privilege, Defendants again rely principally on *Segura v. City of Reno, supra,* and its application of factors set forth in *Frankenhauser v. Rizzo*, 59 F.R.D. 339 (E.D.Pa. 1973).

**1.    Relevance of Internal Affairs Division (IAD) Reports.**

Fed. R. Civ. Pro. 26(b)(1) generally provides that "[p]arties may obtain discovery regarding any matter, not privileged that is relevant to the claim or defense of any party. . . .   Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."

Defendants' objections to Request Nos. 1, 2 and 3 fail to clearly state an objection based on lack of relevance, although Defendants' statement that it is willing to produce relevant information from the files, subject to a protective order and to provide a privilege log, arguably indicates an objection to producing irrelevant portions of these files. Plaintiff's Opposition (#31) does not take issue with the adequacy of Defendants' objections or the fact that they apparently have not provided a privilege log regarding the files. Instead, Plaintiff argues that the IAD and personnel files are sufficiently relevant to justify his request for production of the entire files.

*Maddox v. City of Los Angeles*, 792 F.2d 1408 (9th Cir. 1986), did not directly deal with discovery issues under Rule 26. The plaintiff in *Maddox* appealed from an adverse jury verdict on the grounds that the trial court improperly excluded evidence that during a police department disciplinary proceeding, the defendant police officer admitted to violating the City policy on use of the choke hold. The Ninth Circuit affirmed the district court's ruling that this evidence was inadmissible under Fed.R.Evid. § 403 because its prejudicial effect outweighed its probative value and also on the grounds that the internal affairs investigation and measures taken by the City were remedial measures and

1  inadmissible to prove liability under Fed.R.Evid. § 407.  The court also held that other evidence was
2  admitted regarding the City's policy regarding choke holds and the plaintiff was not prejudiced by
3  exclusion of the IAD investigation findings.
4       In *Segura v. City of Reno, supra*, 116 F.R.D. at 44, the court discussed *Maddox* in regard to
5  whether a police department internal affairs report was discoverable by the plaintiff.  The court stated
6  that because the disciplinary findings are likely inadmissible at trial under Fed.R.Evid. § 403 and § 407,
7  the scope of relevant discovery regarding such documents was potentially limited, but not completely
8  precluded.  In holding that portions of the IAD investigation file were relevant for impeachment
9  purposes, the court stated:

> [T]he IAD investigation consists mostly of summarized fact statements given by the plaintiffs and police officers in question.  Because the statements were made at an earlier time, their value as impeachment material is clear.  The fact summaries in the IAD report are thus relevant and should be produced on that basis.

13  *Segura,* 116 F.R.D. at 44.
14       *Segura* held that the conclusions or findings of the IAD investigation regarding whether the
15  officers were guilty of using excessive force are not admissible evidence to prove that Defendants used
16  excessive force in the subject incident and, therefore was not relevant on that basis.
17       In this case, absent some other relevant purpose for discovering the conclusions reached by the
18  board of review or the police department, this information is irrelevant.  Plaintiff has not identified any
19  relevant purpose for discovering the conclusions of the IAD investigation.  Plaintiff is, however,
20  entitled to discover all factual information contained in the IAD file regarding the officers' or
21  witnesses' description of what transpired during the incident as it relates to whether excessive force was
22  used.  At the hearing in this matter, Plaintiff also raised an issue regarding why there was no videotaped
23  record of the incident.  The IAD file contains factual information regarding this matter which should
24  also be produced to the Plaintiff.
25       **2.**    <u>**Relevance of Defendant Officers' Personnel Files.**</u>
26       In *Segura,* the plaintiff also sought to compel production of the police officers' personnel files.
27  The court held that the vast majority of the documents in these files were irrelevant and need not be
28  produced.  The court noted, however, that there were some documents that could arguably be relevant.

Those documents consisted of memoranda of previous incidents in which the officers were accused of excessive force. The court held, however, that all of those incidents were investigated and where the department found that excessive force had been used, the officer was disciplined. Thus, the court held that the information in the personnel files did not indicate any policy or practice by the police department to fail to train and supervise its officers adequately. The court, therefore, held that the documents were not relevant or discoverable on that basis. *Segura, supra,* 116 F.R.D. at 44.

*Segura* also held that evidence of other specific incidents in which the officers had used or been accused of using excessive force were not admissible to prove that the officers used excessive force in the case at issue. In this regard, the court cited Fed.R.Evid. 404(b) which provides that evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. The court held that the exceptions in the rule did not apply and, therefore, the prior alleged incidents of excessive force were not discoverable. *Id.,* at 44. *Miller v. Pancucci*, 141 F.R.D. 292, 296 n. 3 (C.D. Cal. 1992) and *Ramirez v. County of Los Angeles*, 231 F.R.D. 407 (C.D. Cal. 2005), and the cases cited therein, however, indicate that a less restrictive approach to discovery of evidence of prior bad acts should apply. *Miller* states that evidence of prior bad acts may be admissible, and therefore discoverable, to prove motive, opportunity, preparation, plan, knowledge, identity *or absence of mistake or accident*. *Miller* also held, however, that requests for information regarding prior complaints against the officers, not related to the allegations of excessive force in the complaint, were irrelevant and not discoverable on that basis.

In holding that the personnel files were not discoverable, *Segura* also stated:

> It might be argued that the documents could show that Police Chief Bradshaw knew of these officers' past involvements with excessive force, and that he failed to supervise their training adequately. In so doing, defendant Bradshaw might then be liable for punitive damages. The complaint in this case names Bradshaw only in his official capacity, however, and alleges that he is liable for failing to institute the general policy and procedures for training his officers. It does not allege that he is liable for failing to supervise these officers personally. Thus, the documents will not be released on that basis.

*Segura, supra,* 116 F.R.D. at 44.

Here, Plaintiff's amended complaint alleges claims against the City both for failing to institute the appropriate general policies and procedures for training and supervising officers and also alleges

6

1  that the City is liable for negligently hiring, training and supervising the individual Defendant officers
2  on the alleged basis that the City knew, or should have known that they were not qualified or competent
3  to be police officers. Based on these allegations, this case is distinguishable from *Segura* in this
4  respect. *Mueller v. Walker*, 124 F.R.D. 654, 658 (D. Or. 1989), also cited in Defendants' Reply,
5  distinguished *Segura* on this basis.

6  Thus, evidence regarding prior complaints or incidents of excessive force by the officers are
7  sufficiently relevant and discoverable. Based on its *in camera* review of the personnel files of Officers
8  Daniel and Norte, however, the Court has not found that either officer's personnel file contains
9  information of prior complaints or findings that the officers engaged in the use of excessive force. Nor
10 does either personnel file contain information that either officer had a prior criminal record or other
11 record of violence such that they were not competent or qualified to be police officers on that basis.

### 3.   **Defendants' Executive Privilege Claim.**

In *Miller v. Pancussi*, 141 F.R.D. 292, 297-299 (C.D. Cal. 1992), the court held that federal law governs in regard to a claim of governmental interest privilege in actions brought under federal law for violation of the plaintiff's civil rights. *See, Kerr v. United States District Court for North. Dist.*, 511 F.2d 192, 197 (9th Cir. 1975); *Kelly v. City of San Jose*, 114 F.R.D. 653, 656 (N.D. Cal. 1987). The court stated that in a federal civil rights case, the state's interest is that of a litigant and not, as in diversity cases, that of a sovereign whose law is being applied in the federal forum. The court further stated that it makes no sense to permit state law to determine what evidence is discoverable in cases brought pursuant to federal statutes whose central purpose is to protect citizens from abuses of power by state or local authorities. Thus, where state law bars discovery of relevant records or imposes higher burdens on a plaintiff to obtain relevant information than does federal law, the federal courts will apply federal discovery rules and the federal common law regarding privilege. *Miller v. Pancussi* further states:

> "Federal common law recognizes a qualified privilege for official information. (Citation omitted). Government personnel files are considered official information." *Sanchez v. City of Santa Ana,* 936 F.2d 1027, 1033 (9th Cir.1990). In order to determine whether personnel files sought are privileged, courts must weigh potential benefits of disclosure against potential disadvantages; if the latter is greater, the official information privilege may bar discovery. *Id.* at 1033-34. Such balancing

> should be conducted on a case by case basis, determining what weight each relevant consideration deserves in the fact-specific situation that is before the Court. *Kelly, supra* 114 F.R.D. at 663.

The court further stated that this balancing test is "pre-weighted" in favor of disclosure consistent with the related idea that privileges are generally to be narrowly construed and that doubts about their applicability are to be resolved in favor of disclosure. *Miller, supra,* at 300, citing *Kelly v. City of San Jose*, 114 F.R.D. at 662.

*Miller* also stated that the governmental privilege must be clearly asserted in the discovery responses and, as in any case where a privilege is claimed, the defendant must sufficiently identify the allegedly privileged documents so as to afford the requesting party an opportunity to challenge the assertion of privilege. The court further stated:

> Additionally, the party must submit, at the time it files and serves its response to the discovery request, a declaration or affidavit, under oath or subject to the penalty of perjury, from the head of the department which has control over the matter. *Kerr, supra,* 511 F.2d at 198. The affidavit or declaration must contain:
>
> (1) an affirmation that the agency generated or collected the material in issue and has in fact maintained its confidentiality (if the agency has shared some or all of the material with other governmental agencies it must disclose their identity and describe the circumstances surrounding the disclosure, including steps taken to assure preservation of the confidentiality of the material), (2) a statement that the official has personally reviewed the material in question, (3) a specific identification of the governmental or privacy interests that would be threatened by disclosure of the material to plaintiff and/or his lawyer, (4) a description of how disclosure subject to a carefully crafted protective order would create a substantial risk of harm to significant governmental or privacy interest, (5) and a projection of how much harm would be done to the threatened interests if the disclosure were made.

*Miller, supra,* at 300.

*Ramirez v. County of Los Angeles*, 231 F.R.D. 407 (C.D. Cal. 2005), also discusses and follows the requirements set forth in *Miller*. *Ramirez* also cited Judge Weinstein's summary in *King v. Conde*, 121 F.R.D. 180, 191 (E.D.N.Y. 1988), regarding privacy interests of police officers who are defendants in civil rights suits. Judge Weinstein noted that most information requested in these suits relates to personnel records regarding prior involvement in disciplinary proceedings or citizen complaints. The officers' privacy interests in these matters are not substantial and should be limited in view of the role played by the police officer as a public servant who must be accountable to public review. Judge

Weinstein noted that some requests might touch on intuitively more private domains such as the officer's psychiatric history, but even disclosure of such records are permissible where they contain relevant information. In this regard, the court in *Mueller v. Walker, supra,* 124 F.R.D. at 659, held that the plaintiff was entitled to discover the officer's relevant psychological testing results pertaining to the incident at issue or relating to prior violent episodes. Disclosure of such information to third persons should, however, be restricted by a well drafted protective order such as has been entered in this case.[3]

In this case, the Court would be justified in disallowing Defendants' assertion of "executive privilege" based on their failure to properly assert it. Defendants did not clearly identify this privilege in their objections to Plaintiff's Request for Production of Documents other than to state vaguely "that the requested documents contain personal and confidential information." Secondly, Defendants have not produced a privilege log or an affidavit as described in *Miller, supra.* Plaintiff, however, did not object to Defendants' request at the hearing on this motion that the Court conduct an *in camera* review of the IAD file and the officers' personnel records to determine whether they contain relevant and discoverable information that overcomes any claim of "executive privilege."

As stated above, the officers' personnel files do not reveal any relevant information regarding prior excessive force complaints or incidents involving the Defendant Officers. Nor do the psychological evaluations, employment applications or other information obtained by the City in the employment hiring process indicate that the City obtained information that should have raised a concern about either officer's potential for violent behavior and which should have disqualified them from hiring. The Court, therefore, concludes that there is no relevant information in the personnel files of either officer which should be disclosed to Plaintiff regardless of any claim of privilege.

## **CONCLUSION**

Based on its *in camera* review of the internal affairs division (IAD) records, the Court orders that certain bate stamped pages of the records, as redacted by the Court should be produced. The

---

[3]The court in *Segura* evaluated whether the IAD investigation reports were protected from disclosure by executive privilege under the ten factor test set forth in *Frankenhauser v. Rizzo*, 59 F.R.D. 339 (E.D.Pa. 1973). The court, however, did not discuss whether the privilege in that case had been properly raised.

Court's redaction of the IAD records has been placed in a sealed envelope for pick up by Defendants' counsel and should be produced as directed by this Order, subject to any objection to this Order and the ruling thereon. Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion for Protective Order pursuant to FRCP 26 (#27) is hereby **granted**, in part, and **denied**, in part.

In regard to the Internal Affairs Division investigation records, the Court has indicated by yellow highlighting the portions of the records that may be redacted, i.e. not produced, and has placed those materials in a sealed envelope for pick up by Defendants' counsel. In regard to such documents, the Court orders that the following documents be produced:

1. Page 285, as redacted, should be produced.
2. Pages 286-290 should to be produced.
3. Pages 294 and 295, as redacted on page 295, should be produced.
4. Pages 296 and 297 should be produced.
5. Pages 298 and 299, as redacted on page 299, should be produced.
6. Pages 302 - 319 appear to be copies of the police reports and other information regarding the subject incident, which have probably already been produced. These pages should be produced.

DATED this 12th day of September, 2006.

_____
GEORGE FOLEY, JR.
U.S. MAGISTRATE JUDGE