# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| KENNETH R. ARNOLD, as Personal Representative of the ESTATE OF ROBERT EARL PARKER,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF BOULDER CITY, a Political Subdivision of the State of Nevada, d/b/a Boulder City Police Department; OFFICER JOSEPH "TONY" NORTE, P# 258, individually and as a police officer employed by the CITY OF BOULDER CITY; OFFICER DANIEL, individually and as a police officer employed by the CITY OF BOULDER CITY; DOE POLICE OFFICERS I-XX, each individually and as a police officer employed by the CITY OF BOULDER CITY; JOHN DOES I through X, inclusive,<br><br>Defendants. | 2:04-CV-1093-BES-GWF<br><br>**ORDER** |

Currently before this Court is a Motion for Summary Judgment (#80) filed on October 17, 2007, by Defendants City of Boulder City, Officer Joseph "Tony" Norte, and Officer Daniel (collectively referred to as the "Defendants"). Plaintiff filed his Opposition (#81) on November 5, 2007, and Defendants filed their Reply (#84) on November 19, 2007. The matter was heard by the Court on January 16, 2008.

## I. Background

This case arises from a claim made by Robert Earl Parker ("Parker") that the Boulder City, Nevada police used excessive force in detaining him during a felony traffic stop that

1

occurred in Boulder City, Nevada, on August 15, 2002. Parker was a front passenger in a vehicle that was stopped by a Boulder City police officer after the vehicle was identified as having been involved in a felony hit and run incident. The two individual defendants, Officer Joseph "Tony" Norte ("Officer Norte") and Officer Daniel, both responded separately to the scene after the felony stop was initiated.

After the vehicle was stopped, the initiating officer requested that the driver of the vehicle, Larry Maes ("Maes"), exit the vehicle. Maes informed the officer that the driver's side door was broken and that he could not get out. The initiating officer then requested that Parker exit the vehicle. Parker complied with this request without comment. After Parker exited the vehicle, Officer Norte arrived at the scene. At some point after Officer Norte's arrival, Maes yelled from his window that Parker, who was 72-years old at the time of the incident, suffered from Alzheimer's disease.

Although Parker complied with the initial request to exit the vehicle, Parker was non-compliant with the requests made by Officer Norte while he tried to secure the scene. Parker refused to turn his back to Officer Norte, refused to drop a lit cigarette he held in his hand, and shouted an expletive at Officer Norte when Officer Norte told Parker to drop his cigarette. After Parker refused to comply with these requests, Officer Norte approached Parker and grabbed his wrist with the intent of handcuffing him. Parked resisted Officer Norte's attempts to detain him. Officer Norte then pushed Parker onto the hood of his patrol car and Parker grabbed the front push bars. At this point, Officer Daniel arrived at the scene. Officer Daniel went to aid Officer Norte in his struggle with Parker. Officer Daniel ordered Parker to cease resisting; however, Parker refused to let go of the push bars. Then, Officer Daniel and Officer Norte determined that they needed to remove Parker's hold on the push bars and get him to the ground in order to handcuff him. After being removed from the push bars, Parker still struggled and refused to lay down flat. Officer Daniel then pushed Parker down with his knee and the two officers eventually handcuffed Parker. As a result of this struggle, Parker suffered fractured ribs, abrasions and lacerations.

On January 31, 2005, Kenneth Arnold, as Personal Representative of the Estate of Robert Earl Parker ("Plaintiff"), filed a First Amended Complaint (#6) against the City of Boulder City, Officer Norte, and Officer Daniel alleging that the Defendants had violated Parker's constitutional rights.

Officer Norte, Officer Daniel, and the City have now filed a Motion for Summary Judgment (#80) on all the claims asserted against them. The two officers argue that they are entitled to summary judgment because there is no evidence that, under the circumstances, they used excessive force in their detainment of Parker. (Motion (#80) at p.10-16). In this regard, the officers argue that they used "low level, limited force" in the form of "open-hand control techniques" to detain Parker. Id. at p. 11. The officers also note that after exiting the vehicle, Parker was non-compliant with their demands and struggled against the officers' attempts to handcuff him. Id. at pp. 15-16. In addition, the officers argue that summary judgment is appropriate because they are entitled to qualified immunity. Id. at p. 16. In this regard, the officers argue that the force they used in detaining Parker was "objectively reasonable" and that "a reasonable officer could have believed that such limited force was not a violation of constitutional rights." Id. at p. 18. Finally, the officers reference a written statement authored by the driver of the vehicle, Maes, wherein he stated that Parker was "combative" and that the officers "did what they had to do." (Motion (#80), Exhibit F).

The City also argues that it is entitled to summary judgment because there is "no evidence of any improper policy, practice or other matter that could be considered an act of the City." Id. at p. 19. Specifically, the City argues that there is no evidence of any prior incidents of the use of excessive force by the two officers or other City police. Id. The City also argues that there is no evidence of any pre-employment matters regarding the two officers to support a claim of improper hiring. Id. Finally, the City argues that there is no evidence to support a claim of deliberate indifference with respect to either the training or supervision of its officers. Id. at p. 20.

In the opposition to the foregoing motion for summary judgment, the Plaintiff argues that based on the totality of the circumstances, Officer Norte and Officer Daniel's conduct in

detaining Parker was unreasonable and resulted in the use of excessive force. (Opposition (#81) at pp. 9-12). Specifically, Plaintiff refers to the fact that (i) Parker was elderly, (ii) that the stop occurred on a vehicle in which Parker was merely riding as a passenger, (iii) that the vehicle was "possibly" involved in a hit and run, and (iv) that Maes informed the officers that Parker suffered from Alzheimer's disease. Id. at p. 10. Based on these factors, the Plaintiff argues that the amount of force used was unreasonable. The Plaintiff also argues that the City was negligent in training its officers, that it conducted an incompetent internal affairs investigation, and was negligent in supervision. Id. at pp. 12-15.

## II. Analysis

### A. Summary Judgment Standard.

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The burden of demonstrating the absence of a genuine issue of material fact lies with the moving party, and for this purpose, the material lodged by the moving party must be viewed in the light most favorable to the nonmoving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Martinez v. City of Los Angeles, 141 F.3d 1373, 1378 (9th Cir. 1998). A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the differing versions of the truth. Lynn v. Sheet Metal Workers Int'l Ass'n, 804 F.2d 1472, 1483 (9th Cir. 1986); S.E.C. v. Seaboard Corp., 677 F.2d 1301, 1306 (9th Cir. 1982).

If the moving party presents evidence that would call for judgment as a matter of law at trial if left uncontroverted, then the respondent must show by specific facts the existence of a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Id. at 249-50 (citations omitted). "A mere scintilla of evidence will not do, for a jury is permitted to draw only those inferences

of which the evidence is reasonably susceptible; it may not resort to speculation." British Airways Bd. v. Boeing Co., 585 F.2d 946, 952 (9th Cir. 1978); see also Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 596 (1993). Moreover, "[i]f the factual context makes the non-moving party's claim of disputed facts implausible, then the party must come forward with more persuasive evidence than otherwise would be necessary to show there is a genuine issue for trial." Blue Ridge Ins. Co. v. Stanewich, 142 F.3d 1145, 1149 (9th Cir. 1998)(citing Cal. Architectural Bldg. Products, Inc. v. Franciscan Ceramics, Inc., 818 F.2d 1466, 1468 (9th Cir. 1987)). Conclusory allegations that are unsupported by factual data cannot defeat a motion for summary judgment. Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).

**B. Excessive Force Claim.**

Plaintiff alleges that based on the totality of the circumstances, Officer Norte and Officer Daniel's conduct in detaining Parker was unreasonable and resulted in the use of excessive force. (Opposition (#81), p. 9-12). Claims alleging the use of excessive force are governed by the Fourth Amendment. Graham v. Connor, 490 U.S. 386 (1989). In Graham, the United States Supreme Court held that all claims that law enforcement officers used excessive force, whether deadly or not, in the course of an arrest, an investigatory stop, or other seizure, should be analyzed under the Fourth Amendment and its reasonableness standard. Id. at 395. "Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests,' against the countervailing governmental interests at stake." Id.

"Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." Id. (citing Terry v. Ohio, 392 U.S. 1, 22-27 (1968)). The test of reasonableness under the Fourth Amendment "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id.

1    Moreover, "[t]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Id. "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers violates the Fourth Amendment." Id. "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments in circumstances that are tense, uncertain, and rapidly evolving about the force that is necessary in a particular situation." Id. In addition, the "reasonableness" inquiry "in an excessive force case is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." Id. Finally, "although reasonableness is normally a jury question, 'defendant can still win on summary judgment if the district court concludes after resolving all facts in favor of the plaintiff, that the officer's use of force was objectively reasonable under the circumstances.'" Alexander v. County of Los Angeles, 64 F.3d 1315, 1322 (9th Cir. 1995).

In Tatum v. City and County of San Francisco, the Ninth Circuit Court of Appeals reviewed a district court's order granting summary judgment to defendants in an excessive force case. 441 F.3d 1090 (9th Cir. 2006). In that case, a San Francisco police officer saw an individual by the name of Glenn Fullard ("Fullard") kicking the side door of a police station. The police officer approached Fullard and told him to leave. Fullard initially complied then turned back around and started kicking the door again. The police officer suspected that Fullard was intoxicated or under the influence of a controlled substance based on Fullard's odd behavior and general appearance. The police officer asked for Fullard's identification and warned him that he would be arrested if he did not leave. Fullard did not comply with either request and the police officer informed Fullard that he would be placed in handcuffs. The police officer placed Fullard's left arm behind his back in a bar arm control hold and asked Fullard to place his right arm behind his back. Fullard was non-compliant and attempted to escape from the officer's grasp. The officer instructed Fullard to stop resisting and placed Fullard up against a nearby wall. Fullard continued to struggle and the officer used the bar

arm control hold to force Fullard to the ground. The officer requested assistance and when other police officers arrived at the scene they were able to handcuff Fullard. Fullard was placed on his stomach after he was handcuffed and after several minutes was moved to his side. However, medical assistance was called for when the officers discovered problems with Fullard's breathing. Fullard later died at the scene. Id. at 1092-1093.

Fullard's mother filed a complaint against the officers involved and the City and County of San Francisco, seeking damages under 42 U.S.C. §1983 alleging that Fullard was wrongly arrested and subjected to excessive force. In applying the "objective reasonableness" test to the foregoing facts, the Ninth Circuit held that the police officers' conduct was reasonable in light of the circumstances. Id. at 1096-97. According to the court:

> We think it is clear that Officer Smith's use of a control hold was objectively reasonable under the circumstances of Fullard's arrest. While the criminal conduct underlying Fullard's arrest was not severe, he posed a threat to himself, to the police, and possibly to anyone who passed by him. Fullard spun away from Smith and continued to struggle after Smith told Fullard to "calm down." Even accepting Tatum's contention that Fullard sought to escape Smith's grasp to shift into a less painful position, Fullard still resisted arrest, which justified Smith's continued application of the control hold. Faced with a potentially violent suspect, behaving erratically and resisting arrest, it was objectively reasonable for Smith to use a control hold to secure Fullard's arm long enough to place him in handcuffs.

Id. The court went on to note that "[w]e have held more aggressive police conduct than Smith's objectively reasonable, even where the conduct resulted in serious physical injury." Id. Finally, the court noted that "[t]here is no evidence that Smith applied more force than necessary to restrain Fullard while attempting to secure him in handcuffs." Id.

In Forrester v. City of San Diego, the Ninth Circuit also analyzed a claim of excessive force by police officers. 25 F.3d 804 (9th Cir. 1994). In that case, the police arrested several anti-abortion demonstrators who trespassed on or blocked entrances to private medical clinics. The officers were told to first give the protesters an opportunity to avoid arrest by leaving the premises with a verbal warning. If the demonstrators refused to leave, the police were told to remove them with "pain compliance techniques" involving the application of pain as necessary to coerce movement. Id. at 805. Many of the demonstrators who were removed this way

///

complained of varying degrees of injury to their hands and arms, including bruises, a pinched nerve, and one broken wrist as a result of the pain compliance techniques used. Id.

In reviewing these facts, the Ninth Circuit held that the "evidence satisfies the Graham inquiry of reasonableness." Id. at 807. "First, the nature and the quality of the intrusion upon the arrestees' personal security was less significant than most claims of force. The police did not threaten or use deadly force and did not deliver physical blows or cuts. Rather, the force consisted only of physical pressure administered on the demonstrators' limbs in increasing degrees, resulting in pain." Id. "Second, the city clearly had a legitimate interest in quickly dispersing and removing lawbreakers with the least risk of injury to police and others." Id. Finally, the court stated that "[p]olice officers . . . are not required to use the least intrusive degree of force possible. Rather . . . the inquiry is whether the force that was used to effect a particular seizure was reasonable, viewing the facts from the perspective of a reasonable officer on the scene." Id. at 808. "Whether officers hypothetically could have used less painful, less injurious, or more effective force in executing an arrest is simply not the issue." Id. As such, the court held that the officers' use of force was not considered excessive based on the circumstances.

In the present case, the Court finds that the officers' conduct was reasonable and not violative of the Fourth Amendment. See Graham, 490 U.S. at 386; Alexander, 64 F.3d at 1322; Tatum, 441 F.3d at 1096-97; Forrester, 25 F.3d at 807-08.

Accordingly, Defendants Norte and Daniel are entitled to summary judgment on Plaintiff's excessive force claim.

Moreover, the Court's finding that Officer Norte and Officer Daniel's conduct was objectively reasonable and did not violate Parker's constitutional rights is dispositive of whether the officers are entitled to qualified immunity. An official is entitled to qualified immunity if the facts alleged show that there was no violation of a constitutional right. Bingue v. Prunchak, No. 05-16388, 2008 WL 126643 *3 (9th Cir. 2008).

The fact that there was no constitutional violation is also dispositive as to the Plaintiff's claims against the City. "Neither a municipality nor a supervisor . . . can be liable under §1983

where no injury or constitutional violation has occurred." Jackson v. City of Bremerton, 268 F.3d 646, 653 (9th Cir. 2001). As such, the City is also entitled to summary judgment.

Finally, all remaining state law claims asserted against the Defendants are dismissed pursuant to 28 U.S.C. §1367(c).

### III. Conclusion

Plaintiff has failed to set forth facts sufficient to create a triable issue of material fact on any of the claims asserted in the Amended Complaint (#6).

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment (#80) is **GRANTED.** The clerk of the court shall enter judgment accordingly.

DATED: This 24th day of January, 2008.

_/s/ Sandoval_____
UNITED STATES DISTRICT JUDGE